**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| WCM INDUSTRIES, INC., | ) | |
| | ) | |
| | ) | Civil Action No. 2:13-cv-02019-JPM-tmp |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| IPS CORPORATION, | ) | Jury Demanded |
| | ) | |
| Defendant. | ) | |
| | ) | |

**WCM INDUSTRIES, INC.'S MOTION FOR EXCEPTIONAL CASE AND AWARD OF
FEES WITH INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 2

III.   LEGAL STANDARD ................................................................................................. 5

IV.   ANALYSIS .................................................................................................................. 6

    A.   WCM Is The Prevailing Party ........................................................................ 6

    B.   This Case Is Exceptional ................................................................................. 7

        1.   IPS's Willful Infringement Confirms the Exceptionality of this Case ..................... 7

        2.   IPS's Litigation Positions Lacked Substantive Strength ............................................ 9

        3.   Comparing this Case to Other Cases Demonstrates Exceptionality ......................... 11

    C.   An Award Of Attorneys' Fees Is Appropriate ............................................... 12

        1.   WCM's Rates Are Reasonable ................................................................... 12

    D.   WCM Respectfully Requests An Award Of Post-Judgment Interest Applied  To An Award Of Its Attorneys' Fees ................................................................................ 14

V.   CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adcock–Ladd v. Sec'y of Treasury*,
  227 F.3d 343 (6th Cir. 2000) .................................................................. 13

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A & Magotteaux, Inc.*, No. 3:09-cv-00255,
  2012 WL 4442665 (M.D. Tenn. Sept. 21, 2012)....................................... 6

*Associated Gen'l Contractors of Ohio, Inc. v. Drabik*,
  250 F.3d 482 (6th Cir. 2001) .................................................................. 14

*Blum v. Stenson*,
  104 S. Ct. 1541 (1984).............................................................................. 13

*Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005)................................................................... 7

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
  836 F.2d 1320 (Fed. Cir. 1987)................................................................... 5

*Dowling v. Litton Loan Servicing LP*,
  320 Fed. Appx. 442 (6th Cir. 2009)......................................................... 13

*Farrar v. Hobby*,
  506 U.S. 103 (1992)..................................................................................... 6

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994)................................................................................... 12

*Fresnel Techs., Inc. v. Rokonet Indus. USA, Inc.*, No. 4:01- cv-1091,
  2003 WL 22442936 (N.D. Tex. Oct. 7, 2003) ........................................... 6

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004)................................................................... 7

*Intellect Wireless, Inc. v. Sharp Corp.*,
  45 F. Supp. 3d 839 (N.D. Ill. 2014) ........................................................... 6

*J.P. Stevens Co. v. Lex Tex Ltd., Inc.*,
  822 F.2d 1047 (Fed. Cir. 1987)................................................................. 12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014).................................................................. 5, 6, 7, 12

*ResQNet.com, Inc. v. Lansa, Inc.*,
  533 F. Supp. 2d 397 (S.D.N.Y. 2008)......................................................... 9

*Spectralytics, Inc. v. Cordis Corp.*,
  649 F.3d 1336 (Fed. Cir. 2011) ........................................................................ 8

*SSL Servs., LLC v. Citrix Sys., Inc.*,
  769 F.3d 1073 (Fed. Cir. 2014) ........................................................................ 6

*Trading Technologies International, Inc. v. eSpeed, Inc.*,
  595 F.3d 1340 (Fed. Cir. 2010) ........................................................................ 9

*Waldo v. Consumers Energy Co.*,
  726 F.3d 802 (6th Cir. 2013) ........................................................................ 13

*Wayne v. Vill. of Sebring*,
  36 F.3d 517 (6th Cir. 1994) ........................................................................ 13

**Statutes**

35 U.S.C. § 102 ........................................................................................... 3, 9

35 U.S.C. § 284 ............................................................................................ 6

35 U.S.C. § 285 ...................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 54(d)(2) ................................................................................. 1

LR 54.1(b) ................................................................................................... 1

Pursuant to 35 U.S.C. § 285, Fed. R. Civ. P. 54(d)(2), and LR 54.1(b), Plaintiff WCM Industries, Inc. ("WCM") moves for an order declaring this case exceptional and awarding WCM its reasonable attorneys' fees incurred in this litigation.

## I.      INTRODUCTION

Almost three years after this litigation began, and following a 10-day trial, the jury reached a verdict for WCM and against defendant IPS Corporation ("IPS") on nearly every question presented in the 32-page verdict form. Specifically, WCM secured a finding of infringement from the jury, either directly or indirectly, of every claim asserted and against every IPS product alleged to infringe.   Doc. No. 454, pp. 2-21. Those findings have now led to a damage award that exceeds $4.1 million dollars.   WCM also prevailed on all issues of validity, with findings that the asserted claims: are not anticipated; that none of the prior art identified by IPS is applicable; that the claimed inventions improved upon the prior art through ease of installation, elimination of time on installation, and elimination of 1- and 2-hole overflows; that each of the secondary indicia of non-obviousness set forth in the verdict was established; and that the asserted claims are not obvious.  *Id.*, pp. 22-29.  WCM also prevailed on its affirmative claims, as the jury found that IPS willfully infringed each of the asserted claims.  *Id.*, p. 31.

The Court has recently denied each of IPS's renewed motions for judgment as a matter of law on issues of non-infringement, invalidity and no willfulness. *See* Doc. Nos. 592-594. WCM has achieved a significant victory at trial and is, by any measure, the prevailing party. This is an exceptional case, which stands out from other patent infringement lawsuits in light of the overwhelming one-sided results at trial, and the relative weakness of IPS's litigation positions. Accordingly, WCM respectfully requests an order finding this to be an exceptional case and an award of its reasonable attorneys' fees.

1

## II.      BACKGROUND

With a long history of copying WCM's innovative products, IPS and its affiliate, American Brass & Aluminum Foundry ("AB&A"), continued to infringe WCM's patents despite multiple lawsuits filed by WCM against AB&A and IPS for patent infringement. Trial Tr., 10/14/15, 166:23-173:11, 187:9-188:10.  In order to enforce its valuable patent rights relating to the successful Innovator product line, WCM brought claims again in 2013 for patent infringement against IPS and AB&A, alleging infringement of three WCM patents.[1] *See* Joint Pretrial Order at 2, Doc. No. 424. IPS denied that it infringed the patents and also asserted claims that WCM's patents were invalid. *Id.* A jury trial was held over ten days between October 13, 2015, and October 27, 2015. *See* Min. Entries, Doc. Nos. 430, 432-434, 439, 441, 444, 447, 451, 453.

During the course of the present litigation, WCM provided ample evidence of IPS's copying of WCM's innovative products.  *See, e.g.,* Doc. No. 594, citing Kirk Dep.[2] 133:14-135:16, Doc. No. 507-4 (with reference to "knock[ing] off" a WCM product).  During this time, IPS was well aware of WCM's relevant patent portfolio.  *See, e.g.,* Doc. No. 594, citing Trial Tr. 1213:2-1215:9, Oct. 20, 2015, Doc. No. 468 (Jeffrey Humber, IPS's Director of Engineering, testifying he possessed catalogs and other literature that indicated WCM's products were patent protected); Doc. No. 594, citing Trial Tr., 900:25-901:6, Oct. 19, 2015 (Nicholas Cassella,

---

[1] The three patents at issue are U.S. Patent No. 8,302,220 ("the '220 Patent"); U.S. Patent No. 8,321,970 ("the '970 Patent"); and U.S. Patent No. 8,584,272 ("the '272 Patent"). (Joint Pretrial Order at 2, Doc. No. 424.) The IPS products that WCM alleges infringe WCM's patents ("the Accused Products") include the Original Classic line and the Revised Classic line of bathtub overflow and drain assemblies. (*See id.* at 3-4.)
[2] The videotaped deposition of Steve Kirk was played at trial on October 15, 2015. (*See* Trial Tr. 465:8-9, Oct. 15, 2015, Doc. No. 464.)

president of IPS's plumbing division, testified IPS uses a service to "monitor[] competitors' patent issuance" and was "monitoring WCM's patents.")

During trial, Mr. Casella provided further testimony that, despite all evidence showing AB&A lacked the ability to independently develop the "Classic" line of plumbing products, IPS failed to conduct an investigation during the asset purchase due diligence process regarding how the Classic Product line had been developed by AB&A.  Doc. No. 594, citing Trial Tr. 902:25-903:6, Oct. 19, 2015.  For example, despite knowing WCM's products were protected by WCM's patents, IPS did not even investigate the claims at issue in an earlier lawsuit between WCM and IPS at the time IPS was purchasing AB&A's assets.  *Id*. at 1133:16-18.  Mr. Cassella testified that IPS did not conduct any investigation of AB&A's product line during the due-diligence period of purchasing AB&A's; therefore, IPS could not have developed a good-faith belief that the patents were either invalid or not infringed.  *Id*. at 903:9-13.

Lastly, IPS attempted to evade liability through objectively weak non-infringement and invalidity arguments.  For example, during the course of this litigation, IPS presented the non-infringement and invalidity opinion testimony of Mr. James Paschal.  During his direct examination, Mr. Paschal made the remarkable claim that similarities between the Classic Products and WCM's products were due to compliance with industry standards.  Trial Tr., 1369:15-1372:21, Oct. 20, 2015.  But when pressed on cross, Mr. Paschal admitted that IPS, not a code or standard, was responsible for the dimensions of the Classic Products.  Trial Tr., 1641:9-1655:23, Oct. 21, 2015.  Through its willfulness determination, the jury plainly rejected Mr. Paschal's and IPS's original positions.  Doc. No. 454, p. 31.

IPS claimed throughout this litigation that the asserted claims were invalid as anticipated under 35 U.S.C. § 102. But despite Mr. Paschal offering an expert report opining as to

anticipation, and despite IPS identifying no fewer than twelve alleged prior art references that "anticipate each of the asserted patent claims and thus render those claims invalid pursuant to 35 U.S.C. 102," IPS presented no evidence of anticipation at trial.  Doc. No. 245-1, pp. 4-5; Doc. No. 245-2, pp. 4-5; Doc. No. 245-3, pp. 4-5; Doc. No. 424, p. 10; Doc. No. 286-2, pp. 3-5, 51, 53, 84.  When asked on cross-examination whether "any of the references that you considered [are] anticipatory references," Mr. Paschal could only respond, "I don't know."  Trial Tr., 1436:2-15, Oct. 20, 2015.

Based on these and other facts established at trial, on October 27, 2015, the jury returned a verdict for WCM and finding that IPS had willfully infringed the asserted claims and that the asserted claims were not invalid.  *See* Jury Verdict Form, Doc. No. 454.  The Court entered a judgment on December 4, 2015.  Doc. No. 478.  The following week, on December 10, 2015, WCM filed its motion for enhanced damages.  Doc. No. 488.  On January 4, 2016, IPS filed its renewed motion for judgment as a matter of law of no willful infringement.  Doc. No. 525.  The Court agreed with WCM and on May 12, 2016, denied IPS's renewed motion for judgment as a matter of law of no willful infringement and awarded WCM treble damages in the amount of $4,151,934.  Doc. No. 594.  As noted by the Court in awarding treble damages, "the jury's verdict was not a 'close call,' because the evidence at trial strongly supported WCM's case." *Id*., p. 14.

Also on December 10, 2015, WCM filed a motion for leave to submit supporting invoices, declarations, and fee-specific materials after the Court rules on whether this case is exceptional, which motion is still pending.  Doc. No. 487.  On December 28, 2015, IPS responded to WCM's request for leave, stating it does not oppose bifurcation of the reasonable fee award from the exceptional case determination. Doc. No. 510. WCM is preparing

declarations with summary fee and cost information, and will submit those materials on or before June 1, 2016.  Furthermore, in its Motion and Incorporated Memorandum of Law for Post-Judgment Interest, WCM requested an award of post-judgment interest on, among other awards, ". . . attorneys' fees ([motion forthcoming]) . . . ."  Doc. No. 523, p. 2.  On May 13, 2106, the Court noted WCM's request and awarded post-judgment "on the judgment amount, prejudgment interest, and *any other monetary relief granted by the Court when the judgment is paid*."  Doc. No. 595, pp. 6-7 and 8-9 (emphasis added).  Consequently, in addition to WCM's request for an award of attorneys' fees, WCM has requested the Court include an award of post-judgment interest calculated on any subsequent award of attorneys' fees.

In light of the Court's recent Orders denying IPS's renewed motions for judgment as a matter of law, and various other rulings mentioned below, this Motion is ripe for consideration.

## III.    LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The Supreme Court recently pronounced that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  A party seeking fees need only establish exceptionality "by a preponderance of the evidence standard."  *Id.* at 1758.

"The finding of willful infringement is legally sufficient to meet the criterion of 'exceptional case', and in such case it is within the court's discretionary authority to award attorney fees."  *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1329 (Fed. Cir. 1987); *see also Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 850-853 (N.D.

Ill. 2014) (citation omitted) (noting the Supreme Court in "*Octane Fitness* has broadened the standard for finding exceptional circumstances supporting an award of fees [under § 285]" and listing inappropriate conduct triggering an award of fees ". . . such as willful infringement."); *AIA Eng'g Ltd. v. Magotteaux Int'l S/A & Magotteaux, Inc.*, No. 3:09-cv-00255, 2012 WL 4442665 (M.D. Tenn. Sept. 21, 2012) (finding the case exceptional under 35 U.S.C. § 285 based on the court's prior finding of willful infringement); *Fresnel Techs., Inc. v. Rokonet Indus. USA, Inc.*, No. 4:01- cv-1091, 2003 WL 22442936, at *6 (N.D. Tex. Oct. 7, 2003) (based in part on Defendant's willful infringement, ordering pursuant to 35 U.S.C. §§ 284 and 285 that plaintiff "have and recover from defendant $602,254.60 as compensatory damages, trebled, and reasonable attorneys' fees.").

## IV.   ANALYSIS

### A.   WCM Is The Prevailing Party

"A party 'prevails' when 'actual relief on the merits of his claim materially alters the legal relationship between the parties . . . .'"  *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1087 (Fed. Cir. 2014) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)).  A judgment for damages is relief on the merits that materially alters the legal relationship of the parties.  *Id.* Here, the jury found that WCM was entitled to a $1.00 per-unit royalty, on sales of over 1.2 million units.  Doc. No. 454, p. 30.  After taking into account additional IPS sales through the date of the verdict, the Court entered final judgment in WCM's favor in the amount of $1,383,978.  Doc. No. 478.  Beyond obtaining a damages award in its favor, WCM secured a finding of infringement from the jury, either directly or indirectly, of every claim asserted against every allegedly infringing IPS product.  Doc. No. 454, pp. 2-21.  The verdict also reflects that WCM prevailed on the issue of validity, with findings that the asserted claims are not

anticipated; that none of the prior art identified by IPS is applicable; that no statutory bar applies to the asserted claims; that the claimed inventions improved upon the prior art through ease of installation, elimination of time on installation, and elimination of 1- and 2-hole overflows; that each of the secondary indicia of non-obviousness set forth in the verdict was established; and that the asserted claims are not obvious. *Id.*, pp. 22-29. Importantly, the jury also found that IPS willfully infringed each of the asserted claims. *Id.*, p. 31. IPS has attempted, but failed, to obtain judgment as a matter of law on each these issues. WCM, therefore, achieved a complete victory at trial and is the prevailing party.

### B.      This Case Is Exceptional

Viewing the totality of the circumstances, this case "stands out from others with respect to the substantive strength of a party's litigating position, considering both the governing law and the facts of the case . . ." and is therefore exceptional. *Octane Fitness*, 134 S. Ct. at 1756.

### 1.      IPS's Willful Infringement Confirms the Exceptionality of this Case

The Federal Circuit has identified "willful infringement" as "material inappropriate conduct." *Octane Fitness*, 134 S. Ct. at 1754 (quoting *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). Even before *Octane Fitness* lowered the standard for finding a case exceptional, the Federal Circuit observed that "our cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner." *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) (citation omitted). Consequently, where willfulness has been found, it is well within "the district court's discretion whether to award attorney fees under [35 U.S.C.] § 285." *Id.* (upholding an award of attorney fees based on a finding of willful infringement). "Although an

attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision not to award attorney fees." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011) (collecting cases).

Here, WCM presented substantial evidence of IPS's willful conduct. First, the jury heard evidence of IPS's desire to "knock off" WCM products. *See, e.g.*, Kirk Dep.[3] 133:14-135:16, Doc. No. 507-4 (discussing an IPS employee's suggestion of "knock[ing] off" a WCM product).

Second, and perhaps most importantly, IPS failed to investigate the asserted patents. *Id.* at 827 (citing as a factor "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed"). Jeffrey Humber, IPS's Director of Engineering, testified that he possessed catalogs and other literature that indicated that WCM's products were patent protected. (Trial Tr. 1213:2-1215:9, Oct. 20, 2015, Doc. No. 468.) Mr. Cassella testified that IPS monitored WCM's patents. See Trial Tr. 900:25-901:6, Oct. 19, 2015, Doc. No. 467. Despite knowing that WCM had patent protection, IPS did not even investigate the claims of a patent at issue in an earlier lawsuit between WCM and IPS at the time IPS was purchasing AB&A's assets. *Id.* at 1133:16-18.[4] Mr. Cassella's testimony that IPS did not investigate the AB&A product line in the process of purchasing AB&A's assets also suggests that IPS could not have developed a good-faith belief that the patents were either invalid or not infringed. *Id.* at 903:9-13.

Third, IPS's redesign efforts, which were unsuccessful at avoiding infringement, should carry no weight. For example, in *Trading Technologies International, Inc. v. eSpeed, Inc.*, 595

---

[3] The videotaped deposition of Steve Kirk was played at trial on October 15, 2015. *See* Trial Tr. 465:8-9, Oct. 15, 2015, Doc. No. 464.
[4] That this conduct occurred prior to the patents-in-suit is not fatal to WCM's case. *See Global-Tech.*, 131 S. Ct. at 2072 ("Taken together, this evidence was more than sufficient for a jury to find that [defendant] subjectively believed there was a high probability that [plaintiff's] fryer was patented, [and] that [defendant] took deliberate steps to avoid knowing that fact . . . .").

F.3d 1340, 1358 (Fed. Cir. 2010), the Federal Circuit affirmed the district court's grant of judgment as a matter of law of no willfulness because the infringer's "[p]rompt redesign efforts and complete removal of infringing products in a span of a few months suggest that [it] was not objectively reckless."  As admitted by IPS in this case, however, it made no attempt to redesign its Classic product until mid-2014 and made no attempt to remove the originally infringing "Classic" products.  *See, e.g.*, Trial Tr. 771:19-772:10, Oct. 16, 2015; Trial Tr. 969:23, Oct. 19, 2015; Trial Ex. 42.

### 2.       IPS's Litigation Positions Lacked Substantive Strength

IPS's litigation positions suffered from a demonstrable lack of substantive strength, justifying a finding of exceptional case.  *Cf ResQNet.com, Inc. v. Lansa, Inc.*, 533 F. Supp. 2d 397, 420 (S.D.N.Y. 2008), *adhered to on reconsideration*, No. 01 CIV. 3578 (RWS), 2008 WL 4376367 (S.D.N.Y. Sept. 25, 2008), and *aff'd in part, vacated in part,* 594 F.3d 860 (Fed. Cir. 2010) ("[w]hile [defendant] was ultimately unsuccessful in defending against infringement or proving invalidity," it had not been objectively reckless because "its arguments in these areas were substantial, reasonable, and far from the sort of easily-dismissed claims that an objectively reckless infringer would be forced to rely upon.").  Unlike the defendant in *ResQNet.com*, IPS's arguments pertaining to invalidity and non-infringement were insubstantial, unreasonable, and rejected by this Court and the jury.

Next, IPS claimed throughout this litigation that the asserted claims were invalid as anticipated under 35 U.S.C. § 102, including through Mr. Paschal's expert report on invalidity and by identifying twelve allegedly anticipatory prior art references in the Joint Pretrial Order.  *See supra* Part II.A.  But at trial Mr. Paschal had no support for that position, with Mr. Paschal testifying that he *did not know* whether any of IPS's prior art references were anticipatory. *See*

Doc. No. 594, p. 8 (Order Granting Motion for Enhanced Damages); *see also* Trial Tr. 1436:13-15, Oct. 20, 2015.   That IPS's own invalidity expert was unaware of whether any of the references he discussed with the jury were anticipatory further demonstrates the substantive weakness of IPS's litigation positions.

Furthermore, during his direct examination Mr. Paschal advocated IPS's positions that, among other things, Fritz disclosed a nut; Lewis disclosed an overflow elbow as claimed in the asserted claims; and the design of the Classic Products was dictated by industry standards.   But on cross-examination, Mr. Paschal eventually abandoned each of those positions, precisely because they were not supported by the evidence and because the theory that the dimensions of IPS's Classic product was a function of IPS copying WCM's Innovator product and not at all based on an industry standard.   In other words, IPS's arguments of invalidity and non-infringement were objectively weak as they lacked substantive strength.   *Id.*

Finally, the substantive weakness of IPS's litigation positions is further evident from the jury's sound rejection of those positions.   *See* Doc. No. 454.   In particular, the jury found each of the asserted claims to be infringed by IPS, directly or indirectly.   *Id.*, pp. 2-21.   With respect to validity, the jury not only rejected IPS's arguments regarding anticipation and obviousness, *id.*, pp. 22-23, 29, but also rejected IPS's positions regarding the priority date of the asserted claims, *id.*, pp. 24-26.   Indeed, IPS failed to persuade the jury that a single reference relied upon by its expert, Mr. Paschal, was applicable prior art.   *See, e.g., Id.*, p. 27 (Jury Verdict Form, indicating "None Apply" when asked "Does the scope and content of the prior art at the time of the claimed invention include the following?").   The jury likewise rejected IPS's position regarding willfulness—finding IPS to have willfully infringed all of the asserted claims, *id.*, p. 31—and awarded damages of $1.00 per unit, fifteen times more than the lowest royalty rate advocated by

IPS (6 cents) and four times more than the highest royalty rate advocated by IPS (22 cents).  *Id.*, p. 30; Trial Tr., 10/22/15, 1886:18-1887:2.  The jury's verdict is all the more compelling given that IPS's own Director of Engineering, Mr. Humber, and Plumbing Division President, Mr. Cassella, provided much of the key testimony in WCM's favor.

The relative weakness of IPS's positions is even more evident when compared to the balance of the weight of evidence presented by WCM at trial.  As the Court has already determined, "the jury's verdict was not a 'close call,' because the evidence at trial strongly supported WCM's case."  (Doc. 594, p. 14.)  Consequently, the Court should find this case exceptional and award attorneys' fees to WCM under 35 U.S.C. § 285.

### 3.      Comparing this Case to Other Cases Demonstrates Exceptionality

This action was pending, from filing of the complaint through trial, for approximately three years from 2013 through the end of 2015.  A search was performed on May 16, 2016, to determine the number of patent cases filed in district courts from January 1, 2010 to December 31, 2015.  *See* Declaration of Hiwot Covell filed concurrently herewith, ¶¶ 3-5.  The search revealed that the total number of patent infringement cases filed during this timeframe is 28,797.  Of those 28,797 cases, 2,770 cases were filed in 2010, 3,570 cases were filed in 2011, 5,459 cases were filed in 2012, 6,112 cases were filed in 2013, 5,068 cases were filed in 2014 and 5,818 cases were filed in 2015. Thus, this action is one of 16,998 total patent infringement actions pending between 2013 and 2015.  *Id.*[5]

Out of these 16,998 actions, only ***three*** cases resulted in both a finding of willful infringement and an award of treble damages, as is the case at bar.  *Id*.  Thus, this action falls within the < 1% of exceptional patent cases where the defendant's conduct is so egregious, the

---

[5] This total does not include the high number of cases that were filed prior to and remained pending in 2013 or later.

highest award of enhanced damages applies.  Based on this data, there can be little doubt that this is an exceptional case standing out from the rest, and justifies an award of reasonable attorneys' fees.

### C.     An Award Of Attorneys' Fees Is Appropriate

An award of attorneys' fees is well-justified here.  *See J.P. Stevens Co. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1051 (Fed. Cir. 1987) (identifying factors to consider in deciding whether to award fees, including "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser").  IPS's infringement has been widespread, encompassing hundreds of products, and damaging WCM's business over the course of several years.  IPS has vast resources and used them to engage in a multi-year patent infringement lawsuit against WCM.[6] In light of all these facts, an award of fees incurred by WCM is more than justified.

Another factor supporting an award of fees is that this case was not close, given the substantive weakness of IPS's litigation positions.  Moreover, IPS willfully infringed WCM's patents, increasing its own market share at WCM's expense (as admitted to by IPS's own President at trial).  An award of attorneys' fees would not only result in a fairer allocation of the burdens of litigation between WCM and IPS, but also, given the size of the damages award relative to the annual profits of IPS, would "advance considerations of . . . deterrence."  *Octane Fitness*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

### 1.     WCM's Rates Are Reasonable

When making a determination of a reasonable attorney fee, a district court begins by determining "the fee applicant's 'lodestar,' which is the proven number of hours reasonably

---

[6] IPS's plumbing division had over $101 million in sales in 2014 alone, and is only one division of IPS.  Doc. No. 594, p. 14, n.9.

expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The Sixth Circuit has explained that "[a] district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). "A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" *Adcock–Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 104 S. Ct. 1541, 79 (1984)). The prevailing market rate is "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Id*. A district court is permitted to "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013) (citing *Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442, 447 (6th Cir. 2009) (affirming a district court's calculation of a reasonable hourly rate based on the court's "knowledge of local billing practices" and counsel's customary billing rates)).

As the Court is aware, this case was both lengthy and complex; with millions of dollars directly at stake as well WCM's market share and business reputation. The case involved extensive written discovery, production and review of hundreds of thousands of documents, scores of depositions, numerous hearings, and two rounds of expert discovery (one in connection with claim construction and one at the close of fact discovery). WCM briefed five motions for summary judgment, engaged in extensive pre-trial motion practice, and participated in a ten-day jury trial. Particularly when compared to IPS's own fees incurred in this litigation, who frequently had three or more attorneys appear at depositions and at hearings, WCM's attorneys' fees are reasonable.

13

WCM will be submitting a detailed listing of time entries for the attorneys representing WCM, along with corresponding descriptions of services rendered in this litigation from the filing of the Complaint through the end of trial.  These entries account for each tenth of an hour spent by the attorneys on this matter.  Given the "lodestar" factors, (1) the lawyer's skill and experience, (2) novelty and difficulty of the legal issues presented, (3) the fee customarily charged in the locality for similar legal services, and (4) the amount in controversy, the hourly rate and number of hours spent by the attorneys involved in these two matters were reasonable.

As will be set forth in supporting declarations, the attorneys for WCM have significant experience in patent litigation, and their hourly billing rates are in line with the corresponding *mean* billing rates for attorneys having comparable experience  Moreover, the rates charged by WCM's attorneys are reasonable for patent litigation in the Western District of Tennessee, and are reasonable in view of the specific activities WCM's litigation counsel was required to engage in during the almost three years of litigation against IPS.

### D. WCM Respectfully Requests An Award Of Post-Judgment Interest Applied To An Award Of Its Attorneys' Fees

In addition to WCM's request for an award of attorneys' fees, WCM respectfully requests that the Court include the award of post-judgment interest based on any award of attorneys' fees. *See Associated Gen'l Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 495 (6th Cir. 2001) (holding that attorneys' fees will bear interest from the date of judgment, even if the fees are not quantified until a later date).

## V. CONCLUSION

In summary, this case is exceptional because, as this Court has already determined: "IPS infringed WCM's patents willfully"; "IPS failed to conduct an adequate investigation of the asserted patents after the AB&A asset purchase"; "the jury's verdict was not a 'close call,' because the

14

evidence at trial strongly supported WCM's case"; and IPS's conduct has been "egregious." *See* Doc. No. 594, pp. 14-16.

For the reasons set forth above, WCM respectfully requests that the Court find this case exceptional and award WCM its reasonable attorneys' fees.  WCM will submit supporting declarations, with accompanying fee and cost information, by June 1, 2016.

## CERTIFICATE OF CONSULTATION PURSUANT TO L.R. 7.2(a)(1)(B)

Pursuant to Local Rule 7.2(a)(1)(B), counsel for WCM consulted with counsel for IPS regarding this motion, in writing, and has been informed that IPS intends to oppose the relief sought by this motion.

Respectfully submitted,

SHERIDAN ROSS, P.C.

Dated: May 27, 2016                    s/Ian R. Walsworth
                                       Todd P. Blakely
                                              tblakely@sheridanross.com
                                       Ian R. Walsworth
                                              iwalsworth@sheridanross.com
                                       David B. Kellis
                                              dkellis@sheridanross.com
                                       Hiwot M. Covell
                                              hcovell@sheridanross.com
                                       Kendria E. Pearson
                                              kpearson@sheridanross.com
                                       John C. Heuton
                                              jheuton@sheridanross.com
                                       SHERIDAN ROSS P.C.
                                       1560 Broadway, Suite 1200
                                       Denver, CO 80202
                                       303.863.9700
                                       litigation@sheridanross.com

                                       Stanley M. Gibson
                                              smg@jmbm.com
                                       JEFFER, MANGELS, BUTLER &
                                       MITCHELL LLP
                                       1900 Avenue of the Stars, 7th Floor
                                       Los Angeles, California 90067
                                       Telephone: (310) 203-8080
                                       Facsimile: (310) 712-8548

                                       Glen Reid, Jr.
                                       WYATT, TARRANT & COMBS, LLP
                                       1715 Aaron Brenner Drive, Suite 800
                                       Memphis, TN 38120-4367
                                       Telephone: 901.537.1000
                                       Facsimile: 901.537.1010
                                       greid@wyattfirm.com

                                       *ATTORNEYS FOR WCM INDUSTRIES, INC.*

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 27, 2016, the foregoing was electronically filed through the CM/ECF system which will send Notifications of Electronic Filing to the following:

Bruce S. Kramer
APPERSON CRUMP PLC
6070 Poplar Avenue, Suite 600
Memphis, Tennessee 38119
bkramer@appersoncrump.com

Bruce J. Rose
Scott Benjamin Pleune
Stephen R. Lareau
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280-4000
bruce.rose@alston.com; ben.pleune@alston.com; stephen.lareau@alston.com

*ATTORNEYS FOR IPS CORPORATION*

s/Ian R. Walsworth