IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| WCM INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:13-cv-2019-JPM-tmp |
| v. ) | |
| ) | |
| IPS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**ORDER REVISING ENHANCED DAMAGES ANALYSIS AND CALCULATION**

Before the Court is the Federal Circuit's Order Vacating-in-part and Remanding the issue of enhanced damages decided February 5, 2018. WCM Indus., Inc. v. IPS Corp., 721 F. App'x 959, 972 (Fed. Cir. 2018). The Federal Circuit evaluated this Court's Order Awarding Enhancement of Intermediate Period Damages filed December 7, 2016. (ECF No. 594.) The Federal Circuit found this Court's analysis was "either nonexistent or incorrect" for the first, second, sixth, and seventh Read factors. Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir. 1992)  This order addresses those specific factors and how they affect the enhanced damages determination. The Court's analysis for the other Read factors remains the same as in the December 7, 2016 Order.  For the reasons stated herein, upon further consideration of all of the Read factors, a 2.5 multiple of the award is a sufficient punitive measure for IPS's conduct.

## I. BACKGROUND

Plaintiff WCM brought claims for patent infringement against Defendant IPS, alleging that IPS infringed claims in three of WCM's patents.[1] (Joint Pretrial Order at 2, ECF No. 424.) IPS denied that it infringed the patents and also asserted claims that WCM's patents were invalid. (Id.) At trial the jury found that IPS willfully infringed WCM's patents. (Jury Verdict, ECF No. 454.)

Procedural Background

The procedural background prior to the Federal Circuit appeal is the same as noted in the prior orders. (ECF No. 594; Order Regarding Motion to Amend the Final Amended Judgement, ECF No. 775; and the Order Granting-in-part and Denying-in-part IPS's Motions for Judgment as a Mater of Law of Noninfringement and of No Willfulness filed December 4, 2015, ECF No. 477.)

## II. LEGAL STANDARD

> When the damages [adequate to compensate for the infringement] are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed. Increased damages under this paragraph shall not apply to provisional rights under section 154(d).
>
> The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

---

[1] 1 The three patents at issue are U.S. Patent No. 8,302,220 ("the '220 Patent"); U.S. Patent No. 8,321,970 ("the '970 Patent"); and U.S. Patent No. 8,584,272 ("the '272 Patent"). (Joint Pretrial Order at 2, ECF No. 424.) The IPS products that WCM alleges infringe WCM's patents ("the Accused Products") include the Original Classic line and the Revised Classic line of bathtub overflow and drain assemblies. (See id. at 3-4.)

35 U.S.C. § 284 (emphasis added); see also i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 858 (Fed. Cir. 2010) ("A finding of willful infringement is a prerequisite to the award of enhanced damages." (citing In re Seagate Tech., LLC, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc))). Factors relevant to a court's determination of the extent of enhanced damages include the infringer's behavior, the infringer's good faith belief of invalidity or infringement, and the infringer's size and finances. See Read, 970 F.2d at 826-27 (listing nine factors), abrogated on other grounds by Markman v. Westview Instrs., Inc., 52 F.3d 967 (Fed Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); see also Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1377-78 (Fed. Cir. 2002).

### III. ANALYSIS

Only the Read factors the Federal Circuit found had nonexistent or incorrect analysis will be analyzed below. The Court relies upon its own reasoning and previous findings on the other Read factors in setting punitive damages in this Order.

**Factor 1: Whether the infringer deliberately copied the ideas of another**

The Federal Circuit noted that for the first factor, "while there is evidence of a possible 'culture of copying' at IPS that weighs in favor of enhancement, given that the email [from Mr. Kirk about one of WCM's Watco drains] does not refer to a product involved in the litigation, this factor should not be weighed very strongly in favor of enhancing damages." WCM Indus., 721 F. App'x at 972.

The Court previously determined that "[s]ubstantial evidence was presented that both before and after the locknut was modified in 2014, purchasers of [all] Classic products were instructed to install the products in a manner that directly infringed." (ECF No. 592 at PageID

3

38897 n.5 (citing Trial Tr. 701:17-702:11, 770:17-771:6, Oct. 16, 2015, ECF No. 466; Trial Tr. 1604:2-1605:14, 1606:1-1608:15, Oct. 21, 2015, ECF No. 470; Trial Ex. 32 (instructing the purchaser to turn the overflow plate until it reaches a "high point")).)  In the Court's original order, the Court concluded that "[t]he instructed use of the Revised Classic products, therefore, displays a deliberate attempt by IPS for its users to use the Revised Classic products in a manner that copied the WCM's idea and design." (ECF No. 775 at PageID 41552.)

WCM directs the Court to Mr. Balls' testimony about using dimensions and threading of components to create an optimal fit that ended up being identical to and compatible with WCM's Innovator.  (ECF No. 799 at PageID 41657 (referencing trial transcripts at ECF No. 462 PageIDs 31196-97 and ECF No. 463 at PageIDs 31342-31358, 31355).)  The Federal Circuit explained that a "rational explanation for the Classic Products' identical measurements and compatibility with WCM's Innovator Product was that AB&A had copied the Innovator." WCM Indus., 721 F. App'x at 971.

IPS claims that AB&A and subsequently IPS "sold their Classic Product under not one but *three* duly issued, unchallenged United States Patents, for nearly a decade before the '220 Patent issued."  (Response, ECF No. 805 at PageID 41861.)  "[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right *to exclude others* and confers no right on its holder to make, use, or sell." Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991).  IPS's argument about AB&A's patents does not address Mr. Ball's testimony about the product specific to this litigation.  IPS even recognizes that the first factor favors enhancement.  (Response, ECF No. 805 at PageID 41861.)

Mr. Ball's testimony does not just point toward a possible culture of copying, it also identifies how the specific product in question had dimensions and threading that ended up being identical to WCM's Innovator. Given the above evidence of copying of the products involved in the litigation, the first factor weighs in favor of enhancing damages.

**Factor 2: Whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed**

The Federal Circuit reasoned that, because "[t]he evidence that the court cited in support of its conclusion . . . involves patents or products not at issue in this case," the second factor "only slightly favors enhancing damages." WCM Indus., 721 F. App'x at 972. The Federal Circuit also noted that "it is undisputed that IPS had knowledge of the '220 patent and the '970 patent at least as of the date of the first Colorado suit was filed, about a month before this action was initiated." Id. at 970. That first Colorado suit was filed about a month before this action was initiated. Id. IPS, therefore, did have knowledge of those two patents. After learning about those patents IPS sold its Revised Classic product. Id. at 973. The Federal Circuit reasoned that "WCM provided sufficient evidence for a reasonable jury to have found infringement under the doctrine of equivalents as to IPS's Revised Product and to have found that IPS's infringement was willful." Id.

IPS has not provided evidence of a good-faith belief that WCM's patents were invalid or not infringed during this action. IPS relies heavily on "numerous good-faith non-infringement and invalidity defenses." (Response, ECF No. 805 at PageID 41864.) This Court has concluded IPS's defenses were not objectively reasonable and are not evidence of a good-faith belief that WCM's patents were invalid or not infringed. (ECF No. 594 at PageID 38923.)

5

While IPS went so far as to monitor WCM's patents, IPS failed to investigate the claims of those patents. (Trial Tr. 900:25-901:6, Oct. 19, 2015, ECF No. 467.) Mr. Cassella testified that IPS did not investigate the AB&A product line in the process of purchasing AB&A's assets. (Id. at 903: 9-13.) This further demonstrates that IPS could not develop a good-faith belief that the patents were either invalid or not infringed. When a company has knowledge of a competitor's patent protection and does not take steps to investigate after purchasing additional assets, no belief as to the validity of those patents or infringement can be formed, let alone a good-faith belief. By choosing not to investigate known patents IPS willfully blinded itself to the fundamental concerns of patent infringement.

IPS's Revised Product also failed to provide a good-faith belief of invalidity or non-infringement. IPS's Director of Engineering, Jeff Humber, testified that the Revised Product locknut was modified "[j]ust to take away WCM's perception of any issues that they had with the locknut." (Humber trial testimony, ECF No. 466 at PageID 31814.) AB&A employee Todd Ricco testified that he said he did not have a problem with the Revised Product "[b]ecause the only thing [he] care[d] about is if it works or not and it worked." (Ricco Depo., ECF No. 613 at PageID 39122.)

The evidence does not demonstrate that the Revised Product was made with a good-faith belief of non-infringement. IPS's lack of good-faith belief of invalidity or non-infringement after learning of the specific patents in this case demonstrate that the second factor supports enhanced damages.

**Factor 6: Duration of the defendant's misconduct.**

The Federal Circuit noted that "the patents issued only a short time before the filing of the lawsuit." WCM Indus., 721 F. App'x at 973. This factor does mitigate to some degree the amount as to which damages should be enhanced. While the patents issued only a short time before the filing of the lawsuit, IPS continued selling its infringing Classic Products during the litigation, and even after releasing its allegedly remedial modification in spring of 2014. (Trial Transcript, ECF No. 467 at PageID 32009.) Halo requires this Court to "take into account the particular circumstances of each case in deciding whether to award damages." Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923, 1933 (2016). That includes IPS selling its infringing Classic Products during litigation and after the Revised Product was released.

IPS continued to infringe for over three-and-a-half years through at least June 2016. (ECF No. 774 at PageID 41531 (citing ECF No. 666-1 at 2).) Other courts have found that similar facts favor enhancement under the sixth Read factor, especially when a defendant continues to infringe after the patentee files suit. See, e.g., PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC, No. 5:11-cv-761 (GLS/DEP), 2016 WL 6537977, at *8 (N.D.N.Y. Nov. 3, 2016) ("[C]ontinuing to sell the infringing products after notice of infringement and during the course of litigation supports enhancement."); Broadcom Corp. v. Qualcomm Inc., No. SACV 05-467-JVS(RNBx), 2007 WL 2326838, at *3 (C.D. Cal. Aug. 10, 2007) ("The length of [the infringer's] infringement (approximately two years), coupled with the fact that infringement continued after [the patentee] filed its suit, supports an increase in damages."), vacated on other grounds, 2007 WL 8030058 (C.D. Cal. Nov. 21, 2007).

IPS argues that both PPC and Broadcom above are distinguished from this case because in each one, "the accused infringer had been infringing an issued patent for years before the lawsuit was filed." (Response, ECF No 805 at PageID 41865.) While the duration of infringement is different between PPC, Broadcom, and the present case, the two other cases demonstrate that when infringement occurs throughout litigation the sixth factor's mitigation of enhancement is minimal.

**Factor 7: Remedial action by defendant**

The Federal Circuit explained that this court did not analyze the seventh factor "which may also weigh slightly against enhancement because IPS attempted to take remedial action (albeit ineffectively)." WCM Indus., 721 F. App'x at 959. The jury broadly found willful infringement of each asserted patent by clear and convincing evidence, a finding that the Federal Circuit affirmed. ECF No. 454 at 31; WCM Indus., 721 F. App'x at 959. The jury's willfulness finding applies to both the original Classic products and the Revised Classic products. (Trial Transcript, ECF 472 at PageID 33014; see Oracle Am., Inc. v. Google LLC, Nos. 2017-1118, -1202, 2018 WL 1473875, at *10 (Fed. Cir. Mar. 27, 2018) ("Because the verdict form—though captioned as a 'special verdict'—did not ask the jury to articulate its fact findings in any detail, we must assume that the jury resolved all factual issues relating to the historical facts in favor of the verdict").)

IPS claims that the design and sale of the Revised Product is a remedial action. (Response, ECF No. 805 at PageID 41866.) That redesign was not made to avoid infringement and does not demonstrate that the seventh factor should weigh against enhanced damages. As stated above, the Revised Product locknut was modified "[j]ust to take away WCM's perception

of any issues that they had with the locknut." (Humber trial testimony, ECF No. 466 at PageID 31814 (emphasis added).)  AB&A employee Todd Ricco testified that he said he did not have a problem with the Revised Product "[b]ecause the only thing [he] care[d] about is if it works or not and it worked."  (Ricco Depo., ECF No. 613 at PageID 39122.)  The Federal Circuit explained how the evidence showed that the only modification of the Revised Product locknut was "the removal of the finger indentations."  WCM Indus., 721 F. App'x at 968.  IPS's single change to the infringing Classic Product demonstrates that IPS still copied WCM's design.

IPS did not stop selling the Classic Product even after the Revised Product was released. (Trial Transcript, ECF No. 467 at PageID 32009.)  The Court previously determined that "[s]ubstantial evidence was presented that both before and after the locknut was modified in 2014, purchasers of [all] Classic products were instructed to install the products in a manner that directly infringed." (ECF No. 592 at PageID 38897 n.5 (citing Trial Tr. 701:17-702:11, 770:17-771:6, Oct. 16, 2015, ECF No. 466; Trial Tr. 1604:2-1605:14, 1606:1-1608:15, Oct. 21, 2015, ECF No. 470; Trial Ex. 32 (instructing the purchaser to turn the overflow plate until it reaches a "high point")).) The instructed use of the Revised Classic products, therefore, displays a deliberate attempt by IPS to provide the Revised Classic products to IPS users in a manner that copied WCM's ideas and designs.  The Revised Classic product further demonstrates that IPS's actions were not remedial and were not meant to change whether IPS was still infringing; instead it shows IPS focused on WCM's "perception" of the Revised Classic, rather than whether it still infringed.  (Humber trial testimony, ECF No. 466 at PageID 31814.)  The seventh factor, therefore, does not weigh against enhancement.

**Conclusion**

After engaging in the additional analysis as set out in the Federal Circuit's opinion it appears that, with some modification, enhanced damages are appropriate. Under the first factor the specific evidence of IPS's knowledge of WCM's patents before the lawsuit and identical dimensions and threading of the infringing product support enhanced damages. That testimony suggests that IPS copied WCM's embodiment of WCM's patents and the WCM ideas to which IPS had access. The second factor also supports enhanced damages because IPS knew about the '220 patent and the '970 patent while it continued to infringe throughout the litigation process. That specific knowledge and the jury's verdict of willfulness support enhancing damages. The third factor of litigation misconduct counsels against enhancement because IPS did not engage in that type of conduct. The fourth factor, defendant's size and financial condition weigh in favor of enhanced damages. The fifth factor, the closeness of the case "was also in WCM's favor because the jury verdict was not a close call and the evidence strongly supported WCM's case." WCM Indus., 721 F. App'x at 959. The sixth factor, the duration of defendant's misconduct supports a relatively modest reduction of enhancement because the infringement extended for several years and throughout the litigation period. The seventh factor, remedial action by the defendant, does not weigh against enhancement because IPS's claimed attempts at remedial action were superficial and meant to change WCM's perception without addressing the infringing portion of the Revised Products.

The Federal Circuit articulated that the Read factors are used to help a district court determine "whether to exercise its discretion to award enhanced damages at all, and if so, by how much the damages should be increased." WCM Indus., 721 F. App'x at 959. While an explicit discussion of the Read factors is not mandatory, id., the Court has considered each

10

factor in either this order or the Court's prior order. (ECF No. 594.) This additional analysis specifically reveals that enhancement of damages remains appropriate even if full treble damages are not. Giving maximum weight to the mitigating effect of the third and sixth factors, a reduction of the multiplier from 3.0 to 2.5 is appropriate. Based on the strength of the first, second, fourth and fifth factors as well as the mitigation of the third and sixth factors, the Court, therefore, finds that a 2.5 multiplier of the award is the appropriate enhancement. This results in damages of $1,383,978 for compensatory damages and $2,075,967 for enhanced compensatory damages.[2]

      **SO ORDERED**, this 14th day of March, 2019.

                                              /s/ Jon P. McCalla
                                              JON P. McCALLA
                                              UNITED STATES DISTRICT JUDGE

---

[2] This is based on the reasonable royalty rate of $1.00 for each of the 1,383,978 infringing units sold. (See Judgment, ECF No. 478.) This amount does not include post judgment interest.